**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

IN RE:

**TIMOTHY L. BAILEY**                                                                          **CASE NO. 13-60782**
**BRANDI BALEY**
**DEBTORS**

## MEMORANDUM OPINION AND ORDER

Debtors' proposed chapter 13 plan pays unsecured creditors in full [Doc. 19] (the "Plan"). The Chapter 13 Trustee objects to confirmation arguing that debtors must comply with the disposable income test of 11 U.S.C. § 1325(b)(1)(B) each time the Trustee objects. Debtors contend the Plan satisfies the payment-in-full clause in § 1325(b)(1)(A), so the disposable income test in § 1325(b)(1)(B) does not apply. Debtors have the better argument.

### I. FACTS

The Debtors filed a petition under chapter 13 on June 17, 2013. Debtors have allowed unsecured debts of $8,692.39. The Plan requires payment of $113 in the first seventeen months, increasing to $372 thereafter until all claims are paid. The Trustee projects these payments will pay all claims in month 53 or month 54 of the Plan.

Schedule J provides that the Debtors are paying on two 401(k) loans. The first is paid off at $259 per month in month 17 of the Plan and the second is paid off at $327.32 per month in month 32. The Plan increases the payment amount in month 18 to $372 per month. The dispute herein arises because the Debtors do not include a similar step-up in payment in month 33 when the second 401(k) loan is paid. The Trustee calculates the Plan would pay off creditors in approximately month 43 if the payments were increased in month 33.

The Trustee believes it is important to maximize payments to minimize the risk that subsequent changes in the Debtors' income or expenses will prevent full payment. The Chapter 13 Trustee therefore objected to confirmation [Doc. 31], arguing that Debtors' refusal to increase their payments after the second 401(k) loan is paid off violates the disposable income test.

## II. ANALYSIS

A. Section 1325(b)(1).

Section 1325(a) begins: "Except as provided in subsection (b), the court shall confirm a plan if-- … ." 11 U.S.C. § 1325(a). Section 1325(b)(1) provides:

> **(b)(1)** If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> **(A)** the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> **(B)** the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Section 1325(b)(1) has existed substantially in its current form since 1984. *See* Pub. L. 98-353, Title II, § 317(3), Jul. 10, 1984, 98 Stat. 356. Congress has amended Section 1325 five times since then; § 1325(b)(1) only once. During the twenty-nine years since § 1325(b)(1) was enacted, courts have held that compliance with part (1)(A) or part (1)(B) can satisfy an objection by the trustee. "As written, § 1325(b)(1) requires compliance with either subsection (A) or (B), but not both. Thus, a trustee's objection under § 1325(b)(1) should be denied if a debtor's plan provides for payment of all allowed unsecured claims in full as permitted by § 1325(b)(1)(A) regardless of whether the plan provides for the debtor to pay all of his projected disposable

2

income during each month of the plan." *In re Jones*, 374 B.R. 469, 469 (Bankr. D.N.H. 2007); *see also In re Winn*, 469 B.R. 628, 630 (Bankr. W.D. N.C. 2012) ("Under 11 U.S.C. § 1325(b)(1), a plan is confirmable over [the trustee's] objection if the Debtor's plan satisfies one of two prongs. . . Only one of the prongs need be met, not both."); *In re Eaton*, 130 B.R. 74, 78 (Bankr. S.D. Iowa 1991) ("Section 1325(b) authorizes the court to confirm even if the trustee or an unsecured creditor objects so long as either § 1325(b)(1)(A) or § 1325(b)(1)(B) is met."). Further, §1325(b)(1)(A) is commonly interpreted to require payment in full of unsecured claims. *See Jones*, 374 B.R. at 469 (§ 1325(b)(1)(A) requires "payment of all allowed unsecured claims in full"); *Winn*, 469 B.R. at 630 ("[§1325](b)(1)(A) stipulates that the plan must pay allowed claims in full").

The Trustee acknowledges the current state of the law and has not provided any contrary authority. Trustee's Mem. at 4. The Trustee also acknowledged a Supreme Court decision that recited this reading of the statute, albeit in dictum. *See id.* at 4 n.1, citing *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464 (2010). In *Hamilton*, the Supreme Court provided: "If an unsecured creditor <u>or the bankruptcy trustee</u> objects to confirmation, § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan." 130 S. Ct. at 2469 (emphasis supplied.)

In spite of this unbroken line of authority, the Trustee argues that § 1325(b)(1)(A) does not apply when the trustee objects based on a closer reading of certain statutory language.

B. <u>The Trustee's Argument</u>.

Section 1325(b)(1)(A) requires that "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim." 11 U.S.C.

3

§ 1325(b)(1)(A). The trustee argues that "such claim" must have an antecedent mentioned previously in the subsection; otherwise, the clause is meaningless. Trustee's Mem. at 6-7.

The only claim mentioned previously in § 1325(b)(1) is "an allowed unsecured claim" of a "holder" found in the language leading to parts (1)(A) and (1)(B). *See* 11 U.S.C. § 1325(b)(1) ("If the trustee or <u>the holder of an allowed unsecured claim</u> objects to the confirmation of the plan ... ." (Emphasis supplied.) So "such claim" in part (1)(A) must mean a claim of the objecting creditor. And if no creditor objects, then part (1)(A) has no force or effect because the phrase "such claim" has no antecedent, rendering the clause nonsensical when applied to the trustee. Therefore, the only section that applies when a trustee objects under § 1325(b) is part (1)(B).

The Trustee's argument has several heavy burdens to overcome. First, it must surmount twenty-nine years of settled law to the contrary – law Congress is presumed to know when it amended § 1325 five times without addressing this perceived flaw. *See, e.g.*, *U.S. v. Colahan*, 635 F.2d 564, 568 (6th Cir. 1980) (relying on decades of congressional acquiescence in the FDA's interpretation of a statute to uphold that interpretation). Significantly, Congress amended § 1325(b)(1) as part of the comprehensive BAPCPA bankruptcy reforms in 2005 without limiting or otherwise affecting the applicability of § 1325(1)(A) to objections lodged by unsecured creditors. *See* Pub. L. 109-8, Title III, § 318(2), Apr. 20, 2005, 119 Stat. 93.

The Trustee must also explain away the recent dictum of the Supreme Court in *Hamilton*. *See supra* at Section II.A. Supreme Court dictum is not binding, but it is highly persuasive. *See Wright v. Morris*, 111 F.3d 414, 419 (6th Cir. 1997) ("Where there is no clear precedent to the contrary, we will not simply ignore the Court's dicta . . . Even the Supreme Court's dicta is of persuasive precedential value.") (internal quotation marks omitted) (alterations omitted) (citation

4

omitted); *Grutter v. Bollinger*, 288 F.3d 732, 746 n.9 (6th Cir. 2002) (Supreme Court dicta carry "considerable persuasive authority").

Next, the Trustee's reading of § 1325(b)(1) is inconsistent with the structure of the statute. Section 1325(b)(1) provides that if the trustee <u>or</u> an unsecured creditor objects to confirmation, the court may not confirm the plan unless part (1)(A) <u>or</u> (1)(B) are met. The clear inference is that both conditions may satisfy the objections of both objecting parties.

The hardest problem for the Trustee, however, is the presumption that Congress does not enact nonsensical statutes. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) (Easterbrook, J.) ("Courts . . . try to avoid imputing nonsense to Congress."). The trustee's argument requires the Court to find that, even though § 1325(b)(1) indicates either part (1)(A) or part (1)(B) can satisfy a trustee's objection, part (1)(A) is grammatically nonsensical as to the trustee and does not apply to the trustee. Attributing this nonsensical interpretation to this statute when there are other readings that give part (1)(A) meaning is not a reasonable interpretation.

Any single one of these principles is difficult to overcome; in tandem, they rule out the trustee's reading of the statute, given that another, just as plausible reading is available.

C. <u>The Trustee's Reading of "Such Claim" Is Not the Only Interpretation</u>.

1. <u>"Such Claim" Means the Prior Type or Kind of Claim, Not a Specific Claim</u>.

A fatal flaw in the Trustee's argument is the conclusion that "such claim" can only refer to the objecting creditor's claim. The Trustee concedes the phrase "such claim" in part (1)(A) may be read in the plural as "such claims." Trustee's Mem. at 7. This concession by the Trustee is required by 11 U.S.C. § 102(7), which recognizes that "the singular includes the plural." In § 1325(b)(1), the singular *must* include the plural. For example, if a creditor with multiple

5

claims objects, then "such claim" is easily accepted as "such claims." The trustee concedes as much, but insists that "such claim, if read as "such claims," can only refer to one objecting creditor's multiple claims, or multiple objecting creditors' claims; not all unsecured claims. This reading is too narrow.

Once "such claim" is read to include plural claims, the question becomes which claims "such" refers to. The Trustee's assertion that "such claims" must have an antecedent is correct. But the Trustee's assertion that "such" must therefore refer to some previously specified claim or claims is not. *See* Trustee's Mem. at 7 ("'such claim' or 'such claims' plural must refer to something that has already been specified."). "Such" can mean "that," but "such claim" or "such claims" does not have to mean "that claim" or "those claims" owned by an objecting creditor.

"Such" is more often used to refer to a previously mentioned *type* or *kind*. One dictionary provides that "such" can mean "of the character, quality or extent previously indicated," or "of the same class, type, or sort." Merriam-Webster's Collegiate Dictionary 1247 (11th ed. 2005). Another defines "such" as "[o]f this kind" and "[o]f a kind specified or implied." The American Heritage Dictionary of the English Language 1793 (1992). Therefore, "such claim" or "such claims" may refer to the type or kind of claim previously mentioned.[1] *See*

---

[1] The trustee relies on *Seafort v. Burden* (*In re Seafort*), 669 F.3d 662 (6th Cir. 2012) for the proposition that "such claim" must "refer[] back to something in particular that ha[s] already been specified." Trustee's Mem. at 6. *Seafort* is distinguishable. In *Seafort*, the Sixth Circuit addressed whether post-petition 401(k) contributions were disposable income. In doing so, the court had to construe the phrase "such amount" in a clause which provided that "such amount . . . shall not constitute disposable income." 11 U.S.C. § 541(b)(7)(A)(i). The court held that "such amount" referred to the previously specified "any amount . . . withheld by an employer from the wages of employees for payment as contributions" to a 401(k). *Seafort*, 669 F.3d at 672-73 (quoting 11 U.S.C. § 541 (b)(7)). And because the previously specified "any amount" was excluded from § 541(a) property of the estate, which is comprised of prepetition property, it followed that "such amount" only referred to prepetition 401(k) contributions.

The difference between *Seafort* and this case is that the meaning of the language at issue in *Seafort* was the same regardless of how "such" was read. If "such amount" meant *that* amount, it meant "any amount" contributed prepetition to a 401(k) plan. If "such amount" meant an amount of the type previously mentioned, it meant–any amount contributed prepetition to a 401(k) plan. Because the antecedent of "such" in that statute was *itself* a general type, both definitions of "such" arrived at the same result. Therefore, the court did not have to address which definition of "such" Congress used; it simply noted that "such amount" referred to "any amount." *Id*. at 673. In this

6

*Fowler v. LAC Minerals (USA), LLC*, 694 F.3d 930, 935 (8th Cir. 2012) ("[T]he reference to 'such portions' of property . . . means not just the specific portions of property . . . mentioned in the first sentence, but also any other portions of property with the same 'character, quality or extent' or 'of the same class, type or sort' as that [mentioned] in the first sentence … .").

The previously mentioned type of claim referred to in § 1325(b)(1)(A) is "an allowed unsecured claim" in § 1325(b)(1). If read in the plural, "such claim" may refer to all allowed unsecured claims. This construction avoids making nonsense of part (1)(A), honors the structure of the statute, conforms to Supreme Court dictum, and gives recognition to almost thirty years of settled law that Congress has declined to repeal.

2. <u>The Trustee's Other Arguments Do Not Change This Conclusion</u>.

The Trustee points out that Congress used different language in § 1325 when it wanted to refer to all unsecured claims. *See* Trustee's Mem. at 7-9. Section 1325(a)(4) refers to "each allowed unsecured claim" in what is commonly referred to as the liquidation test. 11 U.S.C. § 1325(b)(4). The Trustee concludes that, because Congress did not use such language in § 1325(b)(1)(A), it could not have meant to refer to all unsecured claims.

There is a recognized rule of construction that when Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (internal quotation marks omitted) (citation omitted). But Congress is also capable of saying the same thing in different ways. It is just as easy to conclude Congress used the "such claim" formulation as an economical mode of expression, instead of using one of the longer phrases. In the subsection the Trustee cites,

---

case, because the antecedent of "such" is a specific unsecured claim held by an objecting creditor, which definition of "such" is used controls whether "such claim" means *that* claim or a claim of that kind.

7

§1325(a)(4), Congress had not previously mentioned unsecured claims, so it could not have used the "such claim" formulation; in § 1325(b)(1), it had, so it could. *See City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 435-36 (2002) ("The . . . presumption that the presence of a phrase in one provision and its absence in another reveals Congress' design–grows weaker with each difference in the formulation of the provisions under inspection.").

Completing the analysis requires consideration of part (1)(A) when only one creditor objects: can "such claim" mean "all unsecured claims" when one creditor objects? There is no reason not to allow this construction merely because only one creditor objects.

As already pointed out, the Supreme Court itself said as much in *Hamilton. See supra* at Section II.A. The Supreme Court words are restated for emphasis: "If an unsecured creditor ... objects to confirmation, § 1325(b)(1) requires the debtor either to pay *unsecured creditors* in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan." *Hamilton*, 130 S. Ct. at 2469 (emphasis supplied).

Moreover, there is nothing problematic about a single creditor's objection triggering a requirement regarding the payment of all unsecured creditors. This reading justifies part (1)(B) as an alternative solution when a creditor objects and the debtor cannot afford to pay creditors in full. The debtor that cannot pay 100% of claims may contribute all projected disposable income to the plan to achieve confirmation. *See* 11 U.S.C. § 1325(b)(1)(B). In most or all cases, other parts of chapter 13 would prevent confirmation of a plan that pays one unsecured creditor in full, but not others. *See, e.g.,* 11 U.S.C. § 1322(a)(3) (requiring equal treatment of claims within a class); § 1322(b)(1) (incorporating § 1122's limitations on separate classification of unsecured claims in chapter 13, and forbidding unfair discrimination against separate classes of unsecured claims).

8

Conversely, even if Congress intended that a creditor's objection only related to its claim or claims, "such claim" can still bear a different meaning when the trustee objects. Assuming that Congress wanted a creditor's objection to only require the payment in full of its claim, it could have separately codified both requirements at a substantial cost of words. Congress instead chose the concise wording of §1325(b)(1). Nothing forbids Congress from choosing a more concise means of expression. *See Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 284 (Stevens, J., dissenting) ("[W]e should not hold Congress to a standard of precision we ourselves are sometimes unable to obtain. Our duty is to ask what Congress intended, and not to assay whether Congress might have stated that intent more naturally, more artfully, or more pithily.") (internal quotation marks omitted) (citation omitted).

It is not necessary to reach a decision on the potentially different meaning of "such" when an unsecured creditor objects, except to recognize that it does not affect the analysis when the trustee is the objecting party. When the trustee objects, a creditor may satisfy § 1325(b) if it either pays all creditors in full under part (1)(A) or contributes all projected disposable income to the plan as required by part (1)(B). Even if it means something different when a creditor objects, and there are good reasons to think it does not, "such claim" is capable of doing so.

D. "Or" Means One, the Other or Both.

The Trustee alternatively argues that an interpretive rule in the Bankruptcy Code requires debtors to comply with both part (1)(A) and part (1)(B) when the trustee objects to confirmation. Initially, this argument seems easily defeated because part (1)(A) and part (1)(B) are linked by the conjunction "or." The Trustee, however, argues that "or" means "and" in this context, citing the Code's rule of construction in 11 U.S.C. § 102(5). Section 102(5) provides that "'or' is not exclusive."

9

This argument does not work. This Code provision was discussed by the Senate Report on the 1978 Code, providing:

> Paragraph (5) [of § 102] specifies that 'or' is not exclusive. *Thus, if a party 'may do (A) or (B),' then the party may do either or both.* The party is not limited to a mutually exclusive choice between the two alternatives.

S. Rep. No. 95-989, at 28, *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5814 (emphasis supplied). As applied to § 1325(b)(1), what § 102(5) means, then, is merely that a debtor *may* comply both with part (1)(A) and part (1)(B), not that he must. Even the Trustee should not dispute that part (1)(B) alone may justify confirmation for a debtor who cannot pay all unsecured claims in full even if a creditor objects. There is no basis in the language of the statute to parse it to mean "or" as to one choice and "and" as to the other. Moreover, literally applying the disposable income test to debtors whose disposable income exceeds their unsecured debts, would lead to the odd result of requiring debtors to pay more than they owe.

E. Public Policy Does Not Justify Ignoring the Terms of the Statute.

The Trustee makes a policy argument that the disposable income test should apply to debtors who propose to pay in full because it results in quicker payments and less risk for unsecured creditors. This fear is justified in this case, as the primary source of the Debtors' income is from the volatile coal industry. A downturn in the coal market could result in unemployment and decreasing plan payments.

But policy arguments cannot defeat the plain meaning of a statute. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). Section 1325(b)(1) plainly does not require compliance with the disposable income test if a debtor proposes to pay unsecured creditors in full. Moreover, the trustee's arguments read more like a feasibility argument and not a true § 1325(b)(1) dispute. In a case of truly unstable employment, the Court may not deem feasible a plan that assumed permanent employment over the applicable commitment period.

10

F. <u>Conclusion.</u>

Section 1325(b)(1)(A) requires that chapter 13 debtors pay unsecured creditors in full when the trustee objects or satisfy the disposable income test. Not both. The Trustee admits the Debtors' Plan satisfies § 1325(b)(1)(A), so the Debtors do not need to satisfy the disposable income test. The trustee's objection to confirmation is <u>OVERRULED</u>.

11

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
<u>*Gregory R. Schaaf*</u>
**Bankruptcy Judge
Dated: Thursday, November 21, 2013
(grs)**